UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

—————

MICHAEL THEODORE PERRY,     )
    )
                   Petitioner,     )      Case No. 1:13-cv-686
    )
v.     )      Honorable Robert Holmes Bell
    )
MARY BERGHUIS,     )
    )      **REPORT AND RECOMMENDATION**
                   Respondent.     )
_____ )

        This is a habeas corpus proceeding brought by a state prisoner under 28 U.S.C. §

2254. Petitioner is serving a prison sentence of 60 months-to-360 months on two plea-based

convictions for third-degree criminal sexual conduct (CSC), MICH. COMP. LAWS § 750.520d, on a

theory of incest.[1] These criminal charges, lodged in the Eaton County Circuit Court, were based on

repeated sexual activity involving petitioner and his 22-year-old niece, who the prosecution

contended was mentally ill. After the state appellate courts denied discretionary review, petitioner's

appellate counsel (the State Appellate Defender Office) initiated this habeas corpus proceeding. The

petition sets forth the following claims:

      I.        The Petitioner's conviction for CSC III is unconstitutional because the state
                 has no proper basis for interfering with matters of private, adult consensual
                 sex as a matter of due process under the Federal Constitution, U.S. Const.
                 Ams. V and XIV.

_____

        [1] Petitioner was also sentenced to a concurrent term of 365 days on his conviction for fourth-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520e, but that conviction expired before this habeas corpus action was instituted.

II.     The legislature's creation of a strict liability crime that carries a fifteen-year maximum penalty and requires registration on the sex offender registry violates petitioner's constitutional right to due process; Petitioner's conviction under that statute must be vacated.

III.    Petitioner was denied the effective assistance of counsel guaranteed by the Federal and State constitutions, U.S. Const. Am. VI; Const. 1963, Art. 1 §20, where his trial attorney failed to make appropriate objections to the issues in this case.

(Petition at 3, docket # 1). Respondent has filed an answer, supported by the state trial and appellate record.

District Judge Robert Holmes Bell has referred this matter to me under 28 U.S.C. § 636(b)(1)(B) and Rule 10 of the Rules Governing Section 2254 Proceedings in the District Courts. Upon review of the submissions of the parties and the state-court record, I conclude that petitioner is not entitled to habeas corpus relief and therefore recommend that the petition be denied on its merits.

## State-Court Proceedings

The state-court prosecution arose from an intimate relationship between petitioner, then aged 49, and his sister's daughter Tiffany. Tiffany was originally from Arkansas. In October 2009, when she was 22-years-old, she moved to the State of Michigan to live with him. They had sex, including sexual intercourse, until Tiffany moved back to Arkansas in early 2010. Tiffany returned to Michigan later that year, moved in with petitioner, and their sexual relationship began again. Tiffany became uncomfortable with the relationship and called it off. The prosecution maintained that, although the relationship was consensual, Tiffany suffered from bipolar disorder and paranoid schizophrenia.

Petitioner was charged with two counts of third-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520d, which criminalizes sexual penetration in certain defined circumstances, including when the sexual conduct is between the actor and a person related to the third degree of blood or affinity or involves a person who is "mentally incapable, mentally incapacitated, or physically helpless." Petitioner was also charged with fourth-degree criminal sexual conduct, MICH. COMP. LAWS § 750.520(e)(1)(d), a high misdemeanor offense involving sexual contact with another person in certain defined circumstances, including relation to the actor by blood or affinity to the third degree.

The state district court conducted a preliminary examination on July 29, 2010. (Prelim. Tr., docket # 9). The principal witness was Tiffany, who testified concerning the sexual relationship, which she described as "consensual." (*Id.*, 25-27). After hearing the evidence, the district judge declined to bind defendant over on a theory that the victim was mentally incapable, finding that Tiffany knew what she was doing, despite her mental illness. (*Id.*, 79). The court did find probable cause to bind over on a finding that petitioner and Tiffany were related within the third degree of blood or affinity, for two counts of criminal sexual conduct, third-degree (*Id.*, 79-80), and one count of fourth-degree CSC on the same theory. (*Id.*, 80-81).[2]

On August 26, 2010, petitioner appeared before Judge Calvin E. Osterhaven to enter a plea of guilty to two counts of third-degree criminal sexual conduct and one count of fourth-degree criminal sexual conduct. (*See* Plea Tr., docket # 10). In exchange for the plea of guilty, the prosecutor agreed to drop the witness-tampering charge and promised not to initiate any charge of

---

[2] The court also bound petitioner over on a charge of witness tempering arising from petitioner's efforts to influence the victim's testimony.

first-degree CSC, a life offense. (*Id.*, 3). The record reflects no plea agreement concerning sentence. During the plea colloquy, petitioner admitted that Tiffany was his sister's daughter. (*Id.*, 9). He contended that he did not know that intercourse with his niece was illegal: "Nobody ever told me that it's illegal to have a relationship with a relative." (*Id.*, 10-11).

On November 24, 2010, petitioner appeared before the court for purposes of sentencing. (Sentencing Tr., docket # 12). At the outset of the hearing, defense counsel informed the court that the "primary factor" for his advice in favor of a guilty plea was to avoid a possible first-degree CSC charge alleging the victim's mental incapacity. (Tr. 5). In mitigation of sentence, counsel admitted that "at some point after this relationship began he became aware of exactly who [Tiffany] was." (*Id.*, 6). During petitioner's allocution, he confirmed that "when Tiffany came up here from Arkansas I did not know *at that time* she was my niece." (*Id.*, 17-18, emphasis added). He later suggested that "the sex stopped" after "it was proven to me that we were related." (*Id.*, 19). The court imposed concurrent sentences of 60 months-to-360 months on the third-degree CSC charges, and a concurrent sentence of 365 months on the fourth-degree CSC charge. The court was required to depart significantly downwards from the state sentencing guidelines in order to impose this sentence. The court cited several reasons for departure, including petitioner's recent contention that he did not know Tiffany was his niece. (*Id.*, 30). As required by state law, the court's judgment (docket # 1-2, ID# 43) provided that these sentences be served consecutively to a prior sentence for first-degree criminal sexual conduct (involving a victim under the age of 13), for which petitioner had served a 24-year sentence and was on parole at the time of the instant offenses. (*Id.*, 9, 16).

Because petitioner was convicted on the basis of a guilty plea, review of his conviction and sentence in the state appellate courts was discretionary. On November 23, 2011, the

-4-

State Appellate Defender Office filed an application for leave to appeal to the Michigan Court of Appeals, raising the three issues reflected in the habeas corpus petition, as well as a challenge to the sufficiency of the factual basis underlying the plea. In a form order entered February 8, 2012, the Michigan Court of Appeals denied discretionary review and affirmed the conviction. (2/8/2012 Order, docket # 15). The prosecutor also sought leave to appeal, asking for review of petitioner's sentence, which represented a significant downward departure from the state sentencing guidelines. The Court of Appeals denied leave on May 26, 2011. (5/26/2011 Order, docket # 13). Petitioner filed an application for leave to appeal to the Michigan Supreme Court, raising the same claims. By standard order entered June 25, 2012, the Michigan Supreme Court denied leave to appeal. (6/25/2012 Order, docket # 16). His attorneys did not petition for *certiorari* to the Supreme Court. This timely habeas corpus action followed.

## Applicable Standard

Because petitioner filed his habeas application long after the April 1996 enactment of the Antiterrorism and Effective Death Penalty Act, Pub. L. 104-132, 110 Stat. 1214 ("AEDPA"), the provisions of that law govern the scope of the court's review. *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands the state court decisions be given the benefit of the doubt." *Bell v. Cone*, 543 U.S. 447, 455 (2005) (citations omitted); *see Hardy v. Cross*, 132 S. Ct. 490, 491 (2011) (*per curiam*); *Felkner v. Jackson*, 131 S. Ct. 1305, 1307 (2011) (*per curiam*); *Renrico v. Lett*, 559 U.S. 766, 773 (2010). "AEDPA requires heightened respect for state court factual and legal

determinations." *Lundgren v. Mitchell*, 440 F.3d 754, 762 (6th Cir. 2006). If a state court adjudicated the claim, deferential AEDPA standards must be applied. 28 U.S.C. § 2254(d); *see Premo v. Moore*, 131 S. Ct. 733, 739 (2011); *Waddington v. Sarausad*, 555 U.S. 179, 190 (2009); *Holder v. Palmer*, 588 F.3d 328, 341 (6th Cir. 2009) (("[A]ny claim that was adjudicated on the merits in State court proceedings' is subject to AEDPA deference.") (quoting 28 U.S.C. § 2254(d)).

AEDPA prevents federal habeas "retrials" and ensures that state court convictions are given effect to the extent possible under law. *Bell v. Cone*, 535 U.S. at 693-94. It prohibits "using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Parker v. Matthews*, 132 S. Ct. 2148, 2149 (2012)(*per curiam*). The AEDPA standard is difficult to meet "because it was meant to be." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011); *see Metrish v. Lancaster*, 133 S. Ct. 1781, 1786-87 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). "Section 2254(d) reflects the that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error corrections through appeal." *Harrington*, 131 S. Ct. at 786. Section 2254(d) states that an application for a writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); *see Metrish v. Lancaster*, 133 S. Ct. at 1786-87; *Berghuis v. Thompkins*, 560 U.S. 370, 380 (2010).

**<u>Discussion</u>**

I.      **Substantive Due-Process Challenge to Incest Statute**

      In his first claim for habeas corpus relief, petitioner asserts a substantive due-process right to be free from prosecution for sexual conduct involving consenting adults. A defendant may not collaterally attack a plea-based conviction by raising "independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of a guilty plea." *Tollett v. Henderson*, 411 U.S. 258, 267 (1973). Because petitioner does not challenge the voluntary and intelligent nature of his guilty plea, he cannot challenge the constitutionality of the Michigan statute as applied to his case. *See Neely v. McDaniel*, 677 F.3d 346, 349 (8th Cir. 2012). Petitioner's guilty plea does not foreclose facial challenges to the constitutionality of a statute: "[A] plea of guilty to a charge does not waive a claim that -- judged on its face -- the charge is one which the State may not constitutionally prosecute." *United States v. Broce*, 488 U.S. 563, 575 (1989) (quoting *Menna v. New York*, 423 U.S. 61, 62 n.2 (1975) (*per curiam*)). To the extent that petitioner is bringing a facial challenge to the constitutionality of Michigan's incest law, his plea does not bar his claim.

      Petitioner erects an elaborate due-process argument that relies at its heart on the Supreme Court's decision in *Lawrence v. Texas*, 539 U.S. 558 (2003), in which the Court struck down a Texas statute prohibiting consensual intercourse with another individual of the same sex. Petitioner reads *Lawrence v. Texas* as holding that "consenting adults were free to engage in private consenting sexual conduct as an exercise of their liberty under the Due Process Clause of the Fourteenth Amendment." (Brief at 9, docket # 1). Petitioner raised the identical argument in the state appellate courts, which denied leave to appeal in unexplained orders.

Where a state appellate court rejects a federal claim without discussion, a rebuttable presumption arises that the state-court adjudication was on the merits. *Johnson v. Williams*, 133 S. Ct. 1088, 1094-98 (2013). Petitioner has made no attempt to rebut the presumption that the denials of leave to appeal represented a decision on the merits. This court must therefore conclude that the state appellate decisions represented rejection of plaintiff's claims on the merits. *See Werth v. Bell*, 692 F.3d 486, 492-94 (6th Cir. 2012) (Michigan appellate order denying relief "for lack of merit in the grounds presented" is presumed to be on the merits). A state appellate decision on the merits of a federal claim is entitled to deference under AEDPA. *See Harrington v. Richter*, 131 S. Ct. 770, 783-84 (2011) (unexplained state appellate order is presumed to be a decision on the merits and is entitled to deference).

Under AEDPA, a federal court may grant a state prisoner's application for a writ of habeas corpus only if a state-court adjudication on the merits "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). In this context, "clearly established law" signifies the holdings, as opposed to the dicta, of the United States Supreme Court. *Howes v. Fields*, 132 S. Ct. 1181, 1187 (2012). The district court may not base its decision on holdings of lower federal courts, let alone manufacture a new due-process right for the first time on habeas corpus review. *See Parker v. Matthews*, 132 S. Ct. 2148, 2155-56 (2012); *Premo v. Moore*, 131 S. Ct. 733, 743 (2011). In the absence of a controlling holding of the United States Supreme Court, this court may not grant relief on a novel due-process claim. *Premo*, 131 S. Ct. at 743 (novelty alone is a reason to reject a habeas claim).

Petitioner's substantive due-process claim falters on the first step of analysis under AEDPA, as petitioner cannot point to any *holding* of the United States Supreme Court recognizing the broadly stated right upon which petitioner's due-process claim depends.  The holding in *Lawrence v. Texas* was not so nearly as sweeping as petitioner now contends, as it was limited to homosexual activity.  At the end of its decision, the *Lawrence* court was careful to exclude from its holding other types of sexual relationships, like incest, involving "persons who might be injured or coerced or who are situated in relationships where consent might not easily be refused."  *Lawrence*, 539 U.S. at 578.

Relying on this and other aspects of the *Lawrence* decision, the Sixth Circuit Court of Appeals has authoritatively rejected the very reading that petitioner now urges.  *Lowe v. Swanson*, 663 F.3d 258 (6th Cir. 2011).  *Lowe* also involved a conviction for incest involving a 22-year-old relative, in this case a stepdaughter.  After unsuccessful attempts to overturn his conviction in the Ohio courts, Lowe brought a habeas corpus action, advancing a claim identical to petitioner's: *Lawrence v. Texas* created a due-process right for related adult persons to decide how to conduct their private sexual lives free from state incest laws.  *Lowe*, 663 F.3d at 261.  The Sixth Circuit noted a disagreement among other circuit courts concerning the scope of the *Lawrence* decision, evidence that "*Lawrence* did not address or clearly establish federal law regarding state incest statutes."  663 F.3d at 264.  The court further acknowledged that a state's interest in criminalizing incest "is far greater and much different than the interest of the State of Texas in prosecuting homosexual sodomy."  *Id.*  The state's "paramount concern is protecting the family from the destructive influence of intra-family, extra-marital sexual contact."  *Id.*  This is an important state interest that the *Lawrence* Court did not clearly invalidate.  *Id.*  Consequently, Lowe's habeas corpus claim was

rejected at the first step of AEDPA analysis, in that the right upon which he relied had not been clearly established by the United States Supreme Court. *Id.*; *see Perry v. Scutt*, No. 5-11-cv-13960, 2012 WL 1890894, at * 3-4 (E.D. Mich. May 23, 2012) (rejecting identical habeas challenge to Michigan incest statute on the basis of *Lowe*).

Had petitioner sought and been granted *certiorari* review in the United States Supreme Court, he would have been free to make the arguments that he now advances. It is at least possible that the Court would extend the holding of *Lawrence* to include incestuous relationships between consenting adults. The role of a habeas court is much more circumscribed. This court is not privileged on habeas corpus review to extend the logic of Supreme Court decisions to new and uncharted factual situations. Rather, a habeas court is limited to deciding whether a state-court's decision is contrary to or represents an unreasonable application of federal law, as enunciated by the holdings of the United States Supreme Court. The Sixth Circuit's *Lowe* decision authoritatively states that *Lawrence v. Texas* did not articulate a holding applicable to state incest laws.[3] This court's inquiry under AEDPA ends there.

## II.    Challenge to Statute As Creating a Strict Liability Offense

Petitioner's second habeas corpus claim is that Michigan's third-degree CSC statute, MICH. COMP. LAWS § 750.520d, creates a strict liability crime with regard to incest, in violation of the Due Process Clause. Petitioner's argument is based on a sort of syllogism:

---

[3] The Sixth Circuit's decision in *Lowe* renders petitioner's first habeas corpus claim inarguable in the district court, in the absence of intervening Supreme Court authority. Attorneys are bound by the rules of ethics to cite controlling, unfavorable authority as a consequence of their duty of candor to the court. MICH. R. PROF. COND. 3.3(a)(3). The *Lowe* decision is not cited in petitioner's brief.

(1)    The Due Process Clause proscribes all strict liability criminal offenses, except certain minor or public welfare offenses.

(2)    The Michigan incest statute defines a strict liability crime, neither minor nor of the public welfare variety.

(3)    Therefore, the Michigan incest statute is unconstitutional.

It has been understood since the time of Aristotle that a syllogism is valid only if both the major and minor premises are true.  In the present case, both premises are false.

First, the Supreme Court of the United States has never held that the Due Process Clause forbids state legislatures from creating strict liability criminal offenses.  Petitioner places principal emphasis on *Morissette v. United States*, 342 U.S. 246 (1952), which did not clearly establish any constitutional principle.  *Morissette* was a federal prosecution for converting property of the United States, in which the defendant claimed that he thought the property had been abandoned.  The trial judge delivered a patently unfair set of jury instructions, including an instruction that the defendant's belief that the property had been abandoned was no defense.  342 U.S. at 249.  The question before the Court raised a pure issue of statutory construction:  Did Congress's failure to identify a mental element in the statutory language evidence a legislative intent to create a strict liability defense?  In deciding this question, the Court reviewed both English and American common law, under which both a *mens rea* and an *actus reus* were traditionally necessary to define a crime.  *Id.* at 250-54.  The Court identified certain exceptions in which lawmakers had created strict liability crimes, generally limited to minor infractions and "public welfare offenses." *Id.* at 254-56.  Quoting Justice Cooley, the Court conceded that there was no universal rule against creating criminal offenses without specifying criminal intent.  *Id.* at 257.  The Court noted that the essential question was one of "legislative intent" and pointedly remarked that it was not undertaking

"to delineate a precise line or set forth comprehensive criteria for distinguishing between crimes that require a mental element and crimes that do not." *Id.* at 258, 260. Ultimately, the Court determined that the mere omission from the statute of any mention of intent "will not be construed as eliminating that element from the crimes denounced." *Id.* at 263. The *Morissette* Court did not purport to enunciate any constitutional rule binding on the states. Contrary to the impression created by petitioner's brief, no due-process principle was discussed; the words "due process" appear nowhere in the opinion.[4] More than four decades later, the Court would cite *Morissette* as standing for the proposition that in construing federal statutes, the courts "presume a *scienter* requirement in the absence of express contrary intent." *United States v. X-Citement Video, Inc.*, 513 U.S. 64, 71-72 (1994).

Petitioner also cites *Staples v. United States*, 511 U.S. 600 (1994), a direct appeal of a federal criminal conviction. The issue in *Staples* was whether or not a criminal provision of the National Firearms Act required knowledge of a firearm's characteristics as an element of the offense. The Court identified the issue as one of "statutory construction." 511 U.S. at 604. The Court did not raise, let alone decide, the scope of any constitutional limitation on a legislature's ability to create strict liability crimes. Petitioner's brief attempts to transmogrify these Supreme Court holdings concerning the scope of federal criminal statutes into constitutional adjudications. This effort is unavailing.

---

[4] In placing heavy reliance on *Morissette*, petitioner's counsel makes an error frequently seen in habeas corpus cases governed by AEDPA. Petitioner is required to identify holdings of the United States Supreme Court grounded on constitutional principles and therefore binding on the states. A decision in a federal prosecution that merely construes Congressional intent does not enunciate a constitutional principle binding on the states and is therefore irrelevant to the AEDPA inquiry.

The closest the Court has come to this question was its decision in *Lambert v. State of California*, 355 U.S. 225 (1957), a direct appeal from a California criminal conviction under a felon registration ordinance. The question in the case was whether a registration act of this character "violates due process where it is applied to a person who has no actual knowledge of his duty to register." 355 U.S. at 227. In approaching the question, the Court was careful to avoid laying down a blanket constitutional rule requiring *mens rea* in every case. *Id.* at 228. Confining itself to the facts before it, which involved totally passive conduct, the Court found a violation of due process arising from the defendant's lack of notice. *Id.* at 229. A decade later, the High Court flatly acknowledged that "this Court has never articulated a general constitutional doctrine of *mens rea*." *Powell v. State of Texas*, 392 U.S. 514, 535 (1968). Referring specifically to *Lambert*, the Court remarked in a footnote that no one contended *Lambert* established a constitutional doctrine regarding *mens rea*. *Id.* at 536 n.27.

The lower federal courts construe *Lambert* as holding that "strict liability criminal offenses are not necessarily unconstitutional." *Stepniewski v. Gagnon*, 732 F.2d 567, 570 (7th Cir. 1984). As the *Stepniewski* court observed: "The United States Supreme Court has not ruled specifically when, if ever, the imposition of strict liability in a criminal statute by itself violates the due process clause of the fourteenth amendment." *Id.* As recently as 2012, the Central District of California found that no holding of the United States Supreme Court has clearly established the unconstitutionality of strict liability offenses. *Hujazi v. Superior Court of Cal.*, 890 F. Supp. 2d 1226, 1236 (C.D. Cal. 2012). Petitioner has not cited, and independent research has not found, any holding of the Supreme Court that clearly establishes due process limitations on a state's ability to define strict liability offenses.

In short, petitioner's major premise (that all strict liability crimes violate due process, unless they are minor offenses or public welfare offenses) is unsustainable by any clear holding of the United States Supreme Court. As far as the holdings of the Court are concerned, the Michigan Legislature is free to dispense with *mens rea* in defining criminal incest. At best, the Court has suggested that due-process principles may limit the promulgation of strict liability crimes in some undefined circumstances. The Court might, or might not, find a constitutional difficulty with such legislation in the future on the basis of constitutional principles not heretofore articulated in the High Court's jurisprudence. A habeas corpus court, however, is forbidden by AEDPA from fashioning such novel due-process principles. Novelty alone is a reason to reject a habeas claim under AEDPA. *Premo*, 131 S. Ct. at 743.

Petitioner's minor premise is also faulty. Petitioner asserts, with no supporting citation of law, that Michigan's criminal sexual conduct statute defines incest as a strict liability offense. To the contrary, the Michigan courts hold that third-degree criminal sexual conduct involving incest is a general intent crime. *See People v. Russell*, 703 N.W.2d 107, 114 (Mich. Ct. App. 2005). Petitioner has presented no support for his assertion that Mich. Comp. Laws § 750.520d defines a strict liability offense.[5] The state courts are the final expositors of state law. *See Bradshaw*

---

[5] Petitioner's position is essentially a convoluted argument arising from the colloquy at sentencing, in which petitioner asserted for the first time that he did not know Tiffany was his niece. This contradicted his sworn testimony at the plea hearing, at which petitioner asserted only that he did not know it was wrong to have sex with a relative. In any event, counsel's argument seems to be that the statute must impose strict liability, given petitioner's assertion at sentencing that he did not know Tiffany was his niece. Essentially, petitioner is challenging the factual basis for his guilty plea, an issue not cognizable in habeas corpus, as the requirement of a factual basis is not constitutional, but is required by state rules. *See Riggins v. McMackin*, 935 F.2d 790, 794-95 (6th Cir. 1991); *accord United States v. Tunning*, 69 F.3d 107, 111 (6th Cir. 1995). By entering a knowing and voluntary plea, a defendant waives his right to challenge the sufficiency of the evidence supporting his conviction. *See United States v. Studabaker*, 578 F.3d 423, 429 (6th Cir. 2009). In

-14-

*v. Richey*, 546 U.S. 74, 76 (2005).  Their interpretation of the state CSC law as creating a general intent offense, and not a strict liability crime, is binding on a habeas court.  *Id.*[6]

Petitioner cannot point to any holding of the United States Supreme Court clearly establishing a due-process restriction on a state's ability to define strict liability crimes.  Moreover, petitioner cannot possibly establish that criminal sexual conduct is indeed a strict liability crime, as the state appellate courts hold otherwise.  Petitioner's second habeas corpus claim is absolutely devoid of merit.

## III.     Ineffective Assistance of Counsel

Petitioner's final claim is that trial counsel was constitutionally ineffective for failure to "make appropriate objections to the issues in this case."  (Pet., docket # 1, ID# 3).  Appellate counsel asserts that trial counsel should have raised the two foregoing due-process challenges in the state circuit court.  This Sixth Amendment claim does not bear scrutiny.

### A.     Standards

In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court held that a guilty plea entered on the advice of counsel is assailable only if counsel's advice fell below the standard of

_____

any event, this court has no basis to conclude that the statute under which petitioner was convicted creates a strict liability offense.

[6] By contrast, statutory rape is a criminal sexual conduct offense which the Michigan courts have described as being "in the nature of" a strict liability offense because the victim is legally incapable of consenting and a reasonable, though mistaken, belief that the complainant was of the age of consent, is not a valid defense.  *See People v. Cash*, 351 N.W.2d 822, 826-28 (Mich. 1984); *People v. Adkins*, No. 257845, 2006 WL 142120, at * 1 (Mich. Ct. App. Jan. 19, 2006) (*per curiam*); *People v. Hamilton*, No. 246793, 2004 WL 1161623, at * 1 (Mich. Ct. App. May 25, 2004) (*per curiam*).

competence demanded of attorneys in criminal cases. 474 U.S. at 56-57. Under *Hill*, the two-pronged standard of *Strickland v. Washington*, 466 U.S. 668 (1984), applies to claims that a defendant's plea of guilty was induced by ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689. The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)). On the prejudice prong, the court focuses on "whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). "[T]he defendant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. To satisfy the prejudice requirement in the context of a guilty plea, a petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 59.

When a state appellate court decides a petitioner's claims of ineffective assistance of counsel on their merits, the court's decision must be afforded deference under AEDPA. *See Burt v. Titlow*, 134 S. Ct. 10, 15-17 (2013); *Harrington v. Richter*, 131 S. Ct. at 785. To receive habeas relief, petitioner must demonstrate that the state court's decision was contrary to, or represented an unreasonable application of, *Strickland v. Washington*. *See Bell v. Cone*, 535 U.S. 685, 698-99

(2002). Hence, it is not enough to convince the federal habeas court that, in its independent judgment, the state-court decision applied *Strickland* incorrectly. Rather, petitioner must show that the state court "applied Strickland to the facts of his case in an objectively unreasonable manner." *Bell*, 535 U.S. at 699; *see Campbell v. Bradshaw*, 674 F.3d 578, 586-87 (6th Cir. 2012). This creates a "high burden" for petitioner. *See Carter v. Mitchell*, 443 F.3d 517, 525 (6th Cir. 2006); *see also Hodges v. Colson*, 727 F.3d 517, 534 (6th Cir. 2013). "[B]ecause the Strickland standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Supreme Court decisions describe this as "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles*, 556 U.S. at 123; *see Yarborough v. Gentry*, 540 U.S. 1, 5-6 (2003) (*per curiam*). The question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard." *Premo v. Moore*, 131 S. Ct. at 740; *see Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013).

B.   <u>Analysis</u>

Analyzed under the doubly deferential standard required by AEDPA, petitioner's claim of ineffective assistance of counsel fails. Petitioner's contention is that his trial attorney should not have counseled him to plead guilty but instead should have challenged the constitutionality of the incest prosecution on the grounds analyzed above. On the performance prong of *Strickland*, petitioner must prove that this decision fell below an objective standard of reasonableness. In other words, petitioner must show that no competent attorney would have failed

to challenge the constitutionality of the state incest law and, further, that no reasonable appellate court could fail to condemn counsel's performance.

Petitioner's presentation on this subject declares that the state incest statute is "demonstrably unconstitutional" and that the flaws in the statute are "obvious." (Brief, docket # 1, ID#s 26-27). This hyperbolic contention does not withstand scrutiny. With regard to the incest statute's alleged due-process flaw, it is sufficient to note that at the time counsel advised his client, no court had ever held that the Michigan incest law suffered from this or any related constitutional infirmity. The state appellate courts, whose decisions were binding on the circuit judge, had never recognized any due-process flaw in the state incest statute. Counsel would have been reduced to reliance on speculative arguments supported by no controlling authority. The chances that a state circuit judge would strike down a state law, the constitutionality of which had never been impugned by the state appellate courts or any federal court, on the basis of novel constitutional arguments is negligible. Furthermore, during the time that this case was on appeal, the Sixth Circuit issued its decision in *Lowe v. Swanson*, 663 F.3d 258 (6th Cir. 2011), which the state appellate courts would certainly consider to be at least persuasive. Petitioner cannot now contend that the appellate courts would have embraced his novel constitutional argument; his position is completely undermined by the fact that both appellate courts failed to grant review on the very basis that petitioner now claims should have been successful.

Condemnation of trial counsel for failure to challenge the state incest statute as a prohibited "strict liability" offense is even more farfetched. At the time that trial counsel acted, the state Court of Appeals had already rejected the identical challenge. In *People v. Russell*, 703 N.W.2d 107 (Mich. Ct. App. 2005), the defendant challenged his incest conviction for fourth-degree criminal

sexual conduct, which contains language identical to the third-degree statute. The defendant in *Russell* argued that the Michigan incest law "is an unconstitutional strict liability crime because it requires no *mens rea*." 703 N.W.2d at 114. Reviewing the issue for plain error, the Michigan Court of Appeals denied relief, on the ground that criminal sexual conduct is not a strict liability crime, but a general intent crime. *Id.* An ethical defense attorney would have been required to inform the Michigan circuit court of the existence of the *Russell* decision, which doomed any challenge to the incest statute as defining a strict liability crime. Defense counsel cannot be deemed ineffective for failing to raise a meritless argument. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010).

Trial counsel made it clear at the time of sentencing that his advice in favor of a guilty plea was motivated by a desire to spare his client a conviction for first-degree criminal sexual conduct. (Sentencing Tr. at 5, docket # 12). "And that was the, the primary factor which caused me to recommend that he not withdraw the plea because the guidelines, should he get convicted of CSC first, certainly would be much higher." As a third-felony offender with a previous conviction for first-degree CSC, petitioner faced a possible life sentence, and counsel was well-advised to eliminate this possibility. The court noted that petitioner was "between a rock and a hard place" because of the threat of additional charges. (*Id.* at 25). Petitioner's present counsel asserts, however, that counsel was incompetent in advising a guilty plea and should have instead fought the charges on the basis of a substantive due-process challenge supported by no controlling case and an amorphous "strict liability" argument that had already been rejected by the Michigan Court of Appeals. This course could have exposed petitioner to a life sentence. Even if petitioner had been convicted only of third-degree CSC after losing at trial, he very well could have forfeited the extremely lenient treatment granted him by the sentencing court. Many, and perhaps most, competent defense lawyers

would have done exactly what trial counsel did in the present case. Few would advise the gamble now advanced by petitioner's counsel. The Michigan appellate courts were completely reasonable in rejecting petitioner's Sixth Amendment claim for lack of a showing of substandard attorney performance. *See Premo*, 131 S. Ct. at 745-46 (In context of guilty plea, AEDPA requires deference to counsel's judgment in face of uncertainty created by threatened charges.)

Petitioner's showing of the required prejudice is completely nonexistent. Under *Hill*, a petitioner challenging a counseled guilty plea has the burden to establish prejudice by showing that "there is a reasonable probability that, but for the counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59; *see Premo*, 131 S. Ct. at 743. As the state appellate courts did not give an explanation as to either *Strickland* prong, full AEDPA deference is due to the state court's decision on the prejudice prong, as well as the competency prong. *Richter*, 131 S. Ct. at 784. The state court decision easily withstands AEDPA scrutiny, as petitioner failed to allege in the state appellate courts, and fails to allege in this court, that he indeed would have insisted on going to trial had counsel advised him of the constitutional challenges that his present attorneys now advance. In *Hill*, the Court determined that the habeas corpus challenge to a counseled guilty plea must fail in the absence of sufficient allegation of prejudice. "Petitioner did not allege in his habeas petition that, had counsel correctly informed him about his parole eligibility date, he would have pleaded not guilty and insisted on going to trial." 474 U.S. at 60. In the absence of a sufficient allegation of the kind of prejudice necessary to satisfy the second half of the *Strickland* test, the district court in *Hill* did not err in rejecting the petition without a hearing. *Id*. In the present case, the petition fails to allege that petitioner would have insisted on a trial.

Likewise, counsel's appellate papers in the state courts make no such allegation. Under the controlling authority of *Hill v. Lockhart*, this is a fatal deficiency.

Petitioner cannot show that his plea was induced by incompetent advice, nor has he alleged that he would have insisted on a trial, and thus exposed himself to a possible life sentence, had he known of the untested constitutional arguments that his present counsel now advances. Petitioner's attempt to overturn his plea-based convictions on the basis of ineffective assistance of counsel cannot be sustained.

## Recommended Disposition

For the foregoing reasons, I conclude that petitioner's claims are devoid of merit and recommend that the habeas corpus petition be denied.

Dated:   February 26, 2014             /s/  Joseph G. Scoville
                                                 United States Magistrate Judge

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you.  28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).  All objections and responses to objections are governed by W.D. MICH. LCIVR 72.3(b).  Failure to file timely and specific objections may constitute a waiver of any further right of appeal.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 458 (6th Cir. 2012); *United States v. Branch*, 537 F.3d 582, 587 (6th Cir. 2008).  General objections do not suffice.  *See McClanahan v. Comm'r of Social Security*, 474 F.3d 830, 837 (6th Cir. 2006); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596-97 (6th Cir. 2006).